# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| BETTY A. ABBINGTON,       )  | |
|    Plaintiff,                          ) | |
|                                      )  | |
| v.                                                ) | CIVIL ACTION NO. 1:17-00552-N |
|                                      ) | |
| NANCY A. BERRYHILL, *Acting*    ) | |
| *Commissioner of Social Security*,  ) | |
|    Defendant.                            ) | |

## ORDER

This action is before the Court on the Motion for Order of Remand (Doc. 18) filed by Plaintiff Betty A. Abbington. The Defendant Commissioner of Social Security ("the Commissioner") has timely filed a response (Doc. 24) in opposition to the motion, Abbington has timely filed a reply (Doc. 25) to the response, and the motion is now under submission. (*See* Doc. 23). Upon consideration, the Court finds that Abbington's motion (Doc. 18) is due to be **DENIED**.[1]

Abbington's present motion asserts that her case must be remanded to the Commissioner for a new hearing because the Administrative Law Judge ("ALJ") who issued an unfavorable decision on her applications for Social Security benefits should be considered an "Officer of the United States" who was not properly appointed in accordance with the Appointments Clause of Article II, Section 2 of the United States constitution, based on the reasoning in the United States Supreme

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).

Court's recent decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In response, the Commissioner argues that Abbington forfeited this claim by failing to raise it at the administrative level. The Court agrees.[2]

"[O]ne who makes a **timely** challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (emphasis added). *Accord Lucia*, 138 S. Ct. at 2055 ("This Court has held that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." (quoting *Ryder*, 515 U.S. at 182-83)). In *Ryder*, petitioner Ryder was an enlisted Coast Guard member challenging his conviction by court-martial. *Ryder*, 515 U.S. at 179. Ryder appealed his conviction to the Coast Guard Court of Military Review, raising an Appointments Clause challenge to the composition of that court for the first time on a request for rehearing. *Id.* After the Court of Military Review rejected his Appointments Clause challenge and largely affirmed his conviction, Ryder appealed to the United States Court of Military Appeals, which agreed that two of the three judges on the Court of Military Review panel had been appointed in violation of the Appointments

---

[2] The Commissioner expressly declines to argue whether Social Security ALJs are "Officers of the United States" subject to the Appointments Clause (*see* Doc. 24 at 2 n.1), and the Court expresses no opinion on that issue.

Clause, but nevertheless affirmed Ryder's conviction on the ground that the actions of these judges were valid *de facto*. *Id.* at 179-80.[3]

On certiorari review, the Supreme Court reversed the Court of Military Appeals, holding that the lower court had "erred in according *de facto* validity to the actions of the civilian judges of the Coast Guard Court of Military Review." *Ryder*, 515 U.S. at 188. In finding that Ryder had timely raised his Appointment Clause challenge, thus "entitl[ing him] to a hearing before a properly appointed panel of" the Court of Military Review, the Court noted that Ryder "challenged the composition of the Coast Guard Court of Military Review while his case was pending before that court on direct review" and "raised his objection to the judges' titles before those very judges and prior to their action on his case." *Id.* at 182.

*Lucia* involved a situation more analogous to Social Security disability adjudications, in which an ALJ issues a decision that is then subject to appellate review by a higher administrative body prior to judicial review. In that case, the Court, citing *Ryder*'s "timely challenge" holding, held that the petitioner had made such a timely challenge to the appointment of the Securities and Exchange Commission ALJ who heard his case when "[h]e contested the validity of [the ALJ]'s

---

[3] "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Ryder*, 515 U.S. at 180 (citation and quotation omitted).

appointment before the Commission, and continued pressing that claim in the Court of Appeals and th[e Supreme] Court[,]" *Lucia*, 138 S. Ct. at 2055, even though the petitioner had not raised the challenge to the ALJ himself. *See id.* at 2050 ("On appeal to the SEC, Lucia argued that the administrative proceeding was invalid because [the ALJ] had not been constitutionally appointed.").[4]

The commonality between *Ryder* and *Lucia* is that both petitioners first raised their Appointments Clause challenges to the entities utilizing the deficiently appointed official or officials.[5] On the other hand, in *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), the Court, at least implicitly, determined that the petitioners had waived their Appointments Clause challenge to special trial judges appointed by the United States Tax Court by "not only by failing to raise a timely objection to the assignment of their cases to a special trial judge, but also by

---

[4] Abbington argues that "[t]he *Lucia* court dealt with a different statutory scheme, the Securities Exchange Act of 1934, which has explicit issue exhaustion requirements." (Doc. 25 at 4). However, there is no indication that the *Lucia* majority relied on that statutory exhaustion requirement in finding the petitioner's Appointments Clause challenge timely there. Rather, *Lucia* cited only to *Ryder*'s "timely challenge" holding, *see Lucia*, 138 S. Ct. at 2055, which also did not concern a statutory exhaustion requirement.

[5] *See also NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 796 (8th Cir. 2013) ("The waiver doctrine requires a party to make each argument it wishes to preserve for appeal in a timely fashion **before the original decisionmaker**." (emphasis added)).

consenting to the assignment[,]" despite later raising the challenge in the circuit court of appeals. 501 U.S. at 872, 878.[6]

Citing *Lucia*, the Ninth Circuit Court of Appeals has held, albeit in an unpublished decision, that petitioners forfeited an Appointments Clause challenge to an SEC hearing officer's decision "by failing to raise it in their briefs **or before the agency**." *Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918, 919 (9th Cir. 2018) (emphasis added) (citing *Lucia*, 138 S. Ct. at 2055). In addressing Appointment Clause challenges to Social Security ALJs since *Lucia* was decided, numerous district courts have held that a claimant forfeits such a challenge by failing to raise it at the administrative level.[7]

---

[6] Nevertheless, the Court in *Freytag* considered the merits of the petitioners' Appointments Clause challenge after determining that it could exercise discretion to excuse the waiver. *See infra.*

[7] *See Trejo v. Berryhill*, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018) (Rosenbluth, M.J.) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings."); *Davis v. Comm'r*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8 (N.D. Iowa Sept. 10, 2018) (Reade, J.) ("Unlike the plaintiff in *Lucia*, Davis did not contest the validity of the Social Security Administration ALJ who decided his case at the agency level. The record clearly demonstrates that Davis did not raise his Appointments Clause argument before either the ALJ or the Appeals Council. Rather, Davis raised this issue for the first time to this court on judicial review, after Judge Williams had issued the Report and Recommendation. Because Davis did not raise his Appointments Clause challenge before the ALJ or Appeals Council, the court finds that he has waived this issue."); *Thurman v. Comm'r*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.) (same as *Davis*); *Iwan v. Comm'r*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.) (same as *Davis* and *Thurman*); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) (Strand, C.J.) ("In *Lucia*, the Supreme Court acknowledged the challenge was timely because it

Here, Abbington concedes that her Appointment Clause challenge was not raised at any point during her administrative proceedings. Nevertheless, Abbington argues that, under the reasoning of *Sims v. Apfel*, 530 U.S. 103 (2000), the judicially-imposed rule that an Appointments Clause challenge must be "timely" raised does not apply to administrative proceedings in Social Security disability determinations.[8] In *Sims*, the majority opinion first explained general "issue exhaustion" principles as follows:

---

was made before the Commission… In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final…*Lucia* makes it clear that this particular issue must be raised at the administrative level."); *Davidson v. Comm'r of Social Security*, No. 2:16-CV-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018) (Crenshaw, C.J.) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge."); *Garrison v. Comm'r*, No. 1:17-CV-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) (Whitney, C.J.) (same as *Trejo*); *Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092, at *4 (D. Kan. Dec. 7, 2018) ("In light of the fact that plaintiff never raised this issue before the Social Security Administration, the court finds that plaintiff did not make a timely challenge to the constitutional validity of the appointment of the ALJ."); *Willis, v. Commissioner of Social Security*, No. 1:18-CV-158, 2018 WL 6381066, at *3 (S.D. Ohio Dec. 6, 2018) ("[T]he Court finds that plaintiff forfeited her Appointments Clause challenge because she failed to present it to the Appeals Council or the ALJ."); *Faulkner v. Comm'r of Soc. Sec.*, No. 117CV01197STAEGB, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018) ("Plaintiff's failure to raise his Appointments Clause challenge at any point in the administrative process or show good cause why he did not do so forfeits his claim.").

[8] *Sims* recognized that, at least at the time it was decided, "SSA regulations do not require issue exhaustion[,]" though the majority "th[ought] it likely that the Commissioner could adopt a regulation that did require issue exhaustion." 530 U.S. at 108. The Commissioner's brief cites various regulations that she argues "require a claimant to raise all issues – including constitutional issues – to the agency at the earliest possible juncture." (Doc. 24 at 6). The undersigned

The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts. As the Court explained in *Hormel v. Helvering,* 312 U.S. 552, 61 S. Ct. 719, 85 L. Ed. 1037 (1941):

> "Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding." *Id.,* at 556, 61 S. Ct. 719.

As we further explained in [*United States v.* ]*L.A. Tucker Truck Lines,*[ 344 U.S. 33, 73 S. Ct. 67, 97 L. Ed. 54 (1952),] courts require administrative issue exhaustion "as a general rule" because it is usually "appropriate under [an agency's] practice" for "contestants in an adversary proceeding" before it to develop fully all issues there. 344 U.S., at 36–37, 73 S. Ct. 67. (We also spoke favorably of issue exhaustion in *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 154–155, 67 S. Ct. 245, 91 L. Ed. 136 (1946), without relying on any statute or regulation, but in that case the waived issue had not been raised before the District Court, see *id.,* at 149, 155, 67 S. Ct. 245.)

But, as *Hormel* and *L.A. Tucker Truck Lines* suggest, the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding. Cf. *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969) (application of doctrine of exhaustion of

---

expresses no opinion on whether those regulations, whether considered singly or in the aggregate, impose a regulatory issue exhaustion requirement. *Ryder*'s requirement that an Appointments Clause challenge be "timely" raised is a judicially imposed exhaustion requirement independent of any statutory or regulatory scheme, and the undersigned finds that Abbington has failed to satisfy *Ryder*'s requirement.

administrative remedies "requires an understanding of its purposes and of the particular administrative scheme involved")….Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest. *Hormel*, *L.A. Tucker Truck Lines*, and *Aragon* each involved an adversarial proceeding. See *Hormel*, *supra*, at 554, 556, 61 S. Ct. 719; *L.A. Tucker Truck Lines*, *supra*, at 36, 73 S. Ct. 67; *Aragon v. Unemployment Compensation Comm'n of Alaska*, 149 F.2d 447, 449–452 (C.A. 9 1945), aff'd. in part and rev'd in part, 329 U.S. 143, 67 S. Ct. 245, 91 L. Ed. 136 (1946). (In *Hormel*, we allowed an exception to the issue-exhaustion requirement. 312 U.S., at 560, 61 S. Ct. 719.) Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker. More generally, we have observed that "it is well settled that there are wide differences between administrative agencies and courts," *Shepard v. NLRB*, 459 U.S. 344, 351, 103 S. Ct. 665, 74 L. Ed. 2d 523 (1983), and we have thus warned against reflexively "assimilat[ing] the relation of … administrative bodies and the courts to the relationship between lower and upper courts," *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 144, 60 S. Ct. 437, 84 L. Ed. 656 (1940).

*Sims*, 530 U.S. at 108–10. After considering these principles, a four-justice plurality of the Court then stated:

The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. Although "[m]any agency systems of adjudication are based to a significant extent on the judicial model of decisionmaking," 2 K. Davis & R. Pierce, Administrative Law Treatise § 9.10, p. 103 (3d ed.1994), the SSA is "[p]erhaps the best example of an agency" that is not, B. Schwartz, Administrative Law 469–470 (4th ed. 1994). See *id.,* at 470 ("The most important of [the SSA's modifications of the judicial model] is the replacement of normal adversary procedure by … the 'investigatory model' " (quoting Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1290 (1975))). Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, see *Richardson v. Perales,* 402 U.S. 389, 400–401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and the Council's review is similarly broad. The Commissioner has no representative before the ALJ to oppose the claim for benefits, and we have found no indication that he opposes claimants before the Council. See generally Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial

Administrative Proceedings, 97 Colum. L. Rev. 1289, 1301–1305, 1325–1329 (1997).

The regulations make this nature of SSA proceedings quite clear. They expressly provide that the SSA "conduct[s] the administrative review process in an informal, nonadversary manner." 20 CFR § 404.900(b) (1999). They permit—but do not require—the filing of a brief with the Council (even when the Council grants review), § 404.975, and the Council's review is plenary unless it states otherwise, § 404.976(a). See also § 404.900(b) ( "[W]e will consider at each step of the review process any information you present as well as all the information in our records"). The Commissioner's involvement in the Appeals Council's decision whether to grant review appears to be not as a litigant opposing the claimant, but rather just as an adviser to the Council regarding which cases are good candidates for the Council to review pursuant to its authority to review a case *sua sponte.* See §§ 404.969(b)-(c); *Perales, supra,* at 403, 91 S. Ct. 1420. The regulations further make clear that the Council will "evaluate the entire record," including "new and material evidence," in determining whether to grant review. § 404.970(b). Similarly, the notice of decision that ALJ's provide unsuccessful claimants informs them that if they request review, the Council will "consider all of [the ALJ's] decision, even the parts with which you may agree," and that the Council might review the decision "even if you do not ask it to do so." App. 25–27. Finally, Form HA–520, which the Commissioner considers adequate for the Council's purposes in determining whether to review a case, see § 422.205(a), provides only three lines for the request for review, and a notice accompanying the form estimates that it will take only 10 minutes to "read the instructions, gather the necessary facts and fill out the form." The form therefore strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review. Given that a large portion of Social Security claimants either have no representation at all or are represented by non-attorneys, see Dubin, *supra,* at 1294, n. 29, the lack of such dependence is entirely understandable.

Thus, the *Hormel* analogy to judicial proceedings is at its weakest in this area. The adversarial development of issues by the parties—the "com[ing] to issue," 312 U.S., at 556, 61 S. Ct. 719—on which that analogy depends simply does not exist. The Council, not the claimant, has primary responsibility for identifying and developing the issues. We therefore agree with the Eighth Circuit that "the general rule [of issue exhaustion] makes little sense in this particular context." *Harwood*[ *v. Apfel*]*,* 186 F.3d[ 1039,] 1042[ (8th Cir. 1999)].

Accordingly, we hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also

exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.

*Id.* at 110–12.[9]

Assuming without deciding that the reasoning of *Sims* would permit an Appointments Clause challenge not raised at the Appeals Council level to still be "timely" under *Ryder* and *Lucia*,[10] *Sims* expressly noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." 530 U.S. at 107. Unlike the Appeals Council's ability to review an ALJ's decision even if a claimant does not request it, an ALJ will only hold a hearing if a request is made, *see* 20 C.F.R. § 404.930(b), and the right to an ALJ hearing can be forfeit if one is not timely requested. *Id.* § 404.390(c). Unlike the cursory form request for Appeals Council review examined in *Sims*, which "strongly suggest[ed] that the Council does not

---

[9] In her concurring opinion, Justice O'Connor stated that she declined to join the plurality's reasoning because, "in [her] view, the agency's failure to notify claimants of an issue exhaustion requirement in th[e] context [presented] is a sufficient basis for our decision." *Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the judgment). Because "the SSA told petitioner (1) that she could request review by sending a letter or filling out a 1–page form that should take 10 minutes to complete, (2) only that failing to request Appeals Council review would preclude judicial review, and (3) that the Appeals Council would review her entire case for issues[,]" and because the petitioner "did everything that the agency asked of her[,]" Justice O'Connor stated that she "would not impose any additional requirements" to exhaust issues before the Appeals Council. *Id.* at 114.

[10] Under 20 C.F.R. § 404.940, if a claimant objects to an ALJ's ability to conduct the hearing and the ALJ "does not withdraw, [the claimant] may, after the hearing, present [her] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge." Arguably, then, § 404.940 requires a claimant to specifically raise objections to the Appeals Council regarding the ALJ's fitness to issue a decision in order for the Appeals Council to consider them.

depend much, if at all, on claimants to identify issues for review[,]" 530 U.S. at 112, a request for an ALJ hearing requires the claimant to provide, *inter alia*, "the reasons [the claimant] disagree[s] with the previous determination or decision" and a "statement of additional evidence to be submitted…" 20 C.F.R. § 404.933(a)(2)-(3). Unlike the "plenary review" exercised by the Appeals Council, which might even review portions of a decision with which a claimant agrees, generally "[t]he issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor[,]" *Id.* § 404.946(a), which can hardly be expected to include a constitutional challenge to the ALJ's authority.

While "[t]he administrative law judge or any party may raise a new issue[,]" even if "it arose after the request for a hearing and even though it has not been considered in an initial or reconsidered determination[,]" the ALJ is not required to consider new issues, and can only do so "if he or she notifies [the claimant] and all the parties about the new issue any time after receiving the hearing request and before mailing notice of the hearing decision." *Id.* § 404.946(b)(1). Moreover, the Social Security regulations appear to require an ALJ to withdraw from hearing a case on his or her own initiative only "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Id.* § 404.940. Otherwise, a claimant is required to "notify the administrative law judge at [the] earliest opportunity" if she objects to that ALJ conducting the hearing. *Id.*

Considering the foregoing, and given that the "timely" Appointments Clause challenges in *Ryder* and *Lucia* were both first raised to the entities utilizing the deficiently appointed officials, the undersigned finds that Abbington was required to raise her Appointments Clause challenge at least to the ALJ for it to be a "timely challenge" on judicial review.[11]

Abbington also argues the forfeiture of her Appointments Clause challenge should be excused under the reasoning of *Freytag*.[12] In that case, the Internal Revenue Commissioner argued that the petitioners had waived their right to assert this challenge, "not only by failing to raise a timely objection to the assignment of their cases to a special trial judge, but also by consenting to the assignment." *Freytag*, 501 U.S. at 878. The Court held that it could consider the merits of the challenge regardless of any such waiver, explaining:

> This Court in the past…has exercised its discretion to consider nonjurisdictional claims that had not been raised below. See *Grosso v. United States,* 390 U.S. 62, 71–72, 88 S. Ct. 709, 715, 19 L. Ed. 2d 906 (1968); *Glidden Co. v. Zdanok,* 370 U.S. 530, 535–536, 82 S. Ct. 1459, 1464–1465, 8 L. Ed. 2d 671 (1962); *Hormel v. Helvering,* 312 U.S. 552, 556–560, 61 S. Ct. 719, 721–723, 85 L. Ed. 1037 (1941). *Glidden* expressly included Appointments Clause

---

[11] Other district courts have similarly rejected the argument that *Sims* excuses a Social Security claimant's failure to raise an Appointments Clause challenge at the administrative level. *Pearson*, 2018 WL 6436092, at *4; *Willis*, 2018 WL 6381066, at *2-3; *Stearns*, 2018 WL 4380984, at *4-6.

[12] As Abbington correctly notes, the Eleventh Circuit has recognized *Sims* for the proposition that "a Social Security claimant's failure to raise an issue at the administrative level does not deprive a court of jurisdiction to consider the issue when it is raised for the first time during judicial proceedings." *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 n.1 (11th Cir. 2002) (per curiam) (generally citing *Sims*).

objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below:

> "And in *Lamar v. United States,* 241 U.S. 103, 117–118[, 36 S. Ct. 535, 539–540, 60 L. Ed. 912 (1916) ], the claim that an intercircuit assignment ... usurped the presidential appointing power under Art. II, § 2, was heard here and determined upon its merits, despite the fact that it had not been raised in the District Court or in the Court of Appeals or even in this Court until the filing of a supplemental brief upon a second request for review." *Glidden,* 370 U.S., at 536, 82 S. Ct., at 1465 (Harlan, J., announcing the judgment of the Court).

Like the Court in *Glidden,* we are faced with a constitutional challenge that is neither frivolous nor disingenuous. The alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation. It is true that, as a general matter, a litigant must raise all issues and objections at trial. But the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome what Justice Harlan called "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers." *Ibid.* We conclude that this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge.

*Id.* at 878–79.

Abbington's constitutional challenge here is also "neither frivolous nor disingenuous." However, the undersigned is not convinced that this is "one of those rare cases" as in *Freytag* where forfeiture should be excused.[13] First, regularly

---

[13] *See Freytag,* 501 U.S. at 893–94 (Scalia, J., concurring in part and concurring in the judgment) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial. Although I have no quarrel with the proposition that appellate courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims, I see no basis for the assertion that the structural nature of a constitutional claim in and of itself constitutes such a circumstance; nor do I see any other exceptional

excusing forfeiture of Appointments Clause challenges under *Freytag* risks eroding the rule in *Ryder*, decided nearly four years after *Freytag* and recently reaffirmed in *Lucia*, that an Appointments Clause challenge must be "timely" to afford the challenger relief. Second, the undersigned notes that *Freytag*, *Glidden*, and *Lamar* all involved Appointments Clause challenges concerning entities of a more judicial nature than the Social Security Administration – the U.S. Tax Court in *Freytag*, and the U.S. courts of appeal and/or district courts in *Glidden* and *Lamar*. *See United States v. Jones*, 74 M.J. 95, 96 (C.A.A.F. 2015) ("Citing *Ryder*…, the Government urges that we treat the issue of Mr. Soybel's appointment[ to the United States Air

---

circumstance in the present case."); *Evans v. Stephens*, 387 F.3d 1220, 1238 (11th Cir. 2004) (en banc) (Wilson, J., dissenting) ("The Supreme Court has held that Appointments Clause objections are 'nonjurisdictional' and thus are subject to forfeiture and waiver analysis. *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 878, 111 S. Ct. 2631, 2639, 115 L. Ed. 2d 764 (1991) (citations omitted). In *Freytag,* the Supreme Court chose to address the Appointments Clause challenge before it, but never suggested that it was compelled to do so. In fact, the majority characterized its exercise of its discretion in that case as 'rare.' *Id.* at 879, 111 S. Ct. at 2639. Four Justices would not have reached the merits of the claim at all. *See id.* at 892, 111 S. Ct. at 2646 (Scalia, J., concurring in part and concurring in the judgment, joined by Justices O'Connor, Kennedy, and Souter)."); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795 (8th Cir. 2013) ("*Freytag* indicates that a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge."); *In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("Like this case, *Freytag*…and *Glidden* involved constitutional challenges under the Appointments Clause. The Supreme Court has never indicated that such challenges must be heard regardless of waiver. *See Freytag,* 501 U.S. at 893, 111 S. Ct. 2631 (Scalia, J., concurring in part and concurring in the judgment) (observing that the court did not create a general rule excusing waiver). Rather, the Court has proceeded on a case-by-case basis, determining whether the circumstances of the particular case warrant excusing the failure to timely object. *See id.,* 501 U.S. at 879, 111 S. Ct. 2631 ('We conclude that this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge.').").

Force Court of Criminal Appeals] as forfeited by the failure of Appellant to raise the issue prior to petitioning this Court. The problem with this approach is that it ignores the consistent treatment of the de facto officer doctrine by the Supreme Court, which has drawn a distinction between deficiencies which are 'merely technical' and may be forfeited if not timely raised, and those which 'embod[y] a strong policy concerning the proper administration of judicial business,' which the Court will reach on direct review whether raised below or not." (quoting *Glidden*, 370 U.S. at 535–36)).

Finally, *Ryder*'s rule that relief is due for "timely" challenges was created as an incentive "to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder*, 515 U.S. at 182–83. Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment). Here, *Freytag* itself, decided in 1991, gave Abbington sufficient authority to raise the present Appointments Clause challenge at the administrative level.

Though Abbington claims that her challenge is brought under the reasoning of the recent *Lucia* decision, *Lucia* relied almost exclusively on *Freytag*'s reasoning, noting that *Freytag* involved "adjudicative officials who are near-carbon copies of the [SEC]'s ALJs[,]" and that the "analysis there (sans any more detailed legal criteria) necessarily decides this case." *Lucia*, 138 S. Ct. at 2052.[14] *Lucia* itself is hardly facially dispositive of whether Social Security ALJs are "Officers of the United States" subject to the Appointments Clause, and nowhere in her briefing does

---

[14] The undersigned concedes that, *Lucia*'s assertions to the contrary, *Freytag*'s applicability to SEC ALJs was not readily apparent to at least some lower courts. *See Bandimere v. United States Sec. & Exch. Comm'n*, 855 F.3d 1128, 1129 (10th Cir. 2017) (Lucero, J., joined by Moritz, J., dissenting from the denial of rehearing en banc) ("[T]he panel decision needlessly and improvidently expands the reach of Freytag v. Commissioner, 501 U.S. 868, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991), which involved judges on the Tax Court, to the unrelated issue of agency administrative law judges ('ALJs'). In light of the significant consequences of this decision, it is not our office to expand the holding in Freytag, to the contrary, any such expansion should remain in the sole discretion of the Supreme Court.").

Nevertheless, the argument was available to Abbington at the time of her ALJ hearing. *See Island Creek Coal Co. v. Wilkerson*, -- F.3d ---, No. 18-3147, 2018 WL 6301617, at *2 (6th Cir. Dec. 3, 2018) ("Island Creek also cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided *Lucia v. Securities & Exchange Commission*, —— U.S. ——, 138 S. Ct. 2044, 201 L. Ed. 2d 464 (2018). No precedent prevented the company from bringing the constitutional claim before then. *Lucia* itself noted that existing case law 'says everything necessary to decide this case.' *Id.* at 2053. The Tenth Circuit, before *Lucia*, held that administrative law judges were inferior officers. *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016). And many other litigants pressed the issue before *Lucia. See, e.g.*, *Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 177–78 (4th Cir. 2016); *Burgess v. FDIC*, 871 F.3d 297, 299 (5th Cir. 2017); *Jones Bros.*[ *v. Sec'y of Labor*], , 898 F.3d [669,] 672[ (6th Cir. 2018)]. That the Supreme Court once denied certiorari in a similar Appointments Clause case adds nothing because such decisions carry no precedential value. *See Teague v. Lane*, 489 U.S. 288, 296, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).").

Abbington attempt to substantively compare Social Security ALJs to the SEC ALJ at issue in *Lucia*.[15]

---

[15] *See DBC*, 545 F.3d at 1380 ("We decline DBC's invitation to consider a[n Appointments Clause] challenge it failed to timely raise, as we do not view the circumstances of this case to warrant such an exceptional measure. Primarily, we reemphasize that while this issue could have been raised before the Board[ of Patent Appeals], it was not. Although DBC may not have appreciated the argument until discovering Professor Duffy's article, that article was not an intervening change in law or facts, nor was it based on any legal or factual propositions that were not knowable to DBC when it was proceeding before the Board. We are not persuaded to overlook DBC's lack of diligence to present an issue of which it was, or should have been, aware. To permit litigants like DBC to raise such issues for the first time on appeal would encourage what Justice Scalia has referred to as sandbagging, i.e., 'suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.' *Freytag,* 501 U.S. at 895, 111 S. Ct. 2631 (Scalia, J., concurring in part and concurring in the judgment)."); *RELCO Locomotives*, 734 F.3d at 795–96 ("RELCO first attempts to argue that it did not waive its appointments clause challenge, for it raised the issue only a few weeks after *Noel Canning*[ *v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013)],was decided. RELCO asserts that it had no way of anticipating 'the relatively arcane constitutional grounds' that led to the decision in *Noel Canning,* and complains that it cannot be asked to 'raise (or risk waiving) every potential legal argument, no matter how novel and lacking in legal support.' … Nothing about this case indicates we should deviate from [the waiver doctrine]. All of the facts and legal arguments necessary to make an appointments clause challenge were available to RELCO when its case was heard by the Board. RELCO was aware that the NLRB's quorum included recess appointees, and it was aware of when and by what means those members were appointed. Indeed, according to RELCO the legal argument has been available since the 1789 ratification of the Constitution. The fact that RELCO initially decided not to pursue this argument because it viewed it as 'arcane,' 'novel,' and 'lacking in legal support' is a strategic decision whose consequences it must accept. The decision in *Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007), on which RELCO relies, grew out of circumstances not present here. In *Spiegla*, a party did not raise an argument which had been specifically rejected by a Seventh Circuit panel in an earlier appeal. *Id.* at 964. The Seventh Circuit allowed the party to raise the issue later because an intervening Supreme Court decision had called the earlier panel opinion into question. *Id.* Here by contrast, there was no binding precedent which would have foreclosed RELCO's appointments clause challenge. Noel Canning itself is not binding on us and did not change the state of

Accordingly, the undersigned finds that Abbington has forfeited her Appointments Clause challenge to the ALJ who heard her case by failing to raise that challenge before the Social Security Administration, and Abbington has not shown sufficient cause to excuse the forfeiture. Thus, Abbington's Motion for Order of Remand (Doc. 18) is **DENIED**.

As directed in the Court's order dated August 22, 2018 (*see* Doc. 23 at 2), the Commissioner must file and serve her brief in accordance paragraphs 4 and 5 of the scheduling order (Doc. 5) no later than 30 days following the date of entry of this order.

**DONE** and **ORDERED** this the 13th day of December 2018.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

the law in this circuit."); *United States v. Suescun*, 237 F.3d 1284, 1288 (11th Cir. 2001) ("[E]ven if we were to assume that Keefer's appointment as temporary United States Attorney was invalid1-because it was not made in conformance with the Appointments Clause-we conclude that the appointment did not deprive the district court of jurisdiction to entertain the case and to adjudicate Suescun guilty of the charged offenses. Suescun waived his objection to the validity of the indictment because he did not present it as required by Rule 12(b), and the jurisdictional exception does not apply." (footnote omitted)); *Faulkner*, 2018 WL 6059403, at *2-3 (declining to excuse forfeiture of *Lucia* claim under reasoning of *Freytag*).

*Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016), cited by Abbington in support of her *Freytag* argument, is not persuasive. That case involved excusing a belated challenge to the statutory authority of the National Labor Relations Board's to act without a valid quorum, rather than an Appointments Clause challenge. Moreover, whereas *Freytag* calls for waiver in "rare cases," the Third Circuit excused waiver in *Advanced Disposal* under the specific statutory authority allowing courts to consider issues not first raised to the NLRB when the failure to raise them was due to "extraordinary circumstances." 29 U.S.C. § 160(e).