**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BETTY A. ABBINGTON,**        ) <br>     **Plaintiff,**              ) <br>                         ) <br> **v.**                              ) <br>                         ) <br> **NANCY A. BERRYHILL,** *Acting*   ) <br> *Commissioner of Social Security,* ) <br>     **Defendant.**           ) | **CIVIL ACTION NO. 1:17-00552-N** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Betty A. Abbington brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* Upon consideration of the parties' briefs (Docs. 14, 29) and those portions of the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20). The parties jointly waived the opportunity for oral argument. (*See* Docs. 31, 32).

Abbington also filed a separate motion to remand this action to the

# I.  *Background*

Abbington filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on June 9, 2014.  Both applications alleged disability beginning November 5, 2012.[2]  After her applications were initially denied, Abbington requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on March 21, 2016.  On October 26, 2016, the ALJ issued an unfavorable decision on Abbington's applications, finding her not disabled under the Social Security Act and thus not entitled to benefits.  (*See* R. 7 – 24).

The Commissioner's decision on Abbington's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's decision on October 16, 2017.  (R. 1 – 5).  Abbington subsequently filed this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision.  *See* 42 U.S.C. § 1383(c)(3) ("The final

---

Commissioner on the basis that the Administrative Law Judge who issued the unfavorable decision on her applications was not constitutionally appointed.  (Doc. 18).  That motion has been denied by separate order (Doc. 26).

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005).  For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.     *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)

(alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a

---

[3]     Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*,

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper

---

26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').");  *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo*

the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established

that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.  *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Abbington met the applicable insured status requirements through December 31, 2016,[6] and that she had not engaged in

---

[6] Abbington asserts that the ALJ's last-insured date is erroneous and should instead be December 31, 2017, but she does not claim that remand is due on this issue. (*See* Doc. 14 at 4).

substantial gainful activity since November 5, 2012, the alleged disability onset date. (R. 12 – 13). At Step Two, the ALJ determined that Abbington had the following severe impairments: degenerative disc disease, degenerative osteoarthritis of the cervical and lumbar spine, bilateral carpal tunnel syndrome, and a mood disorder. (R. 13). At Step Three, the ALJ found that Abbington did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in the Listing of Impairments. (R. 13 – 15).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Abbington had the RFC "to perform many elements of a sedentary level work as defined in 20 CFR 404.1567(a) and 416.967(a),[7] but not a 'full range' of such work (See SSR 83-10). She can lift and carry up to ten pounds; sit for two hours at a time and at least six hours total but would need to stand every hour at the work station with no significant interference in productivity, stand thirty minutes at a time, walk fifteen minutes at a time, and stand and walk in combination for about three hours total in a day; occasionally bend, stoop, squat, kneel, and crouch; never climb ladders, ropes, and scaffolds; push and pull occasionally with the feet and legs but never with the hands and arms; frequently but not continuously perform fine and gross manipulation such as grasping, gripping, twisting, and turning; occasionally climb stairs and ramps; and work in a lower stress, unskilled, routine, and repetitive work environment that requires no more than occasional decisions made when on the job, no more than occasional change in the routine, and no more than occasional interaction with the general public." (R. 15 – 22).

Based on this RFC and the testimony of a vocational expert,[8] the ALJ

---

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

[8] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national

determined that Abbington was unable to perform any past relevant work. (R. 22 – 23). At Step Five, based on additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Abbington could perform given her RFC, age, education, and work experience. (R. 23 – 24). Thus, the ALJ found that Abbington was not disabled under the Social Security Act. (R. 24).

## IV. *Analysis*

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the

economy." *Phillips*, 357 F.3d at 1240.

claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Id.* (quoting *Lewis*, 125 F.3d at 1440).[9] "Good cause exists 'when the: (1) treating physician's opinion was not

---

[9] On the other hand, the opinions of non-treating physicians "are not entitled to deference…" *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *See also Brock v. Comm'r, Soc. Sec. Admin.*, No. 17-14600, 2018 WL 6624608, at *4 (11th Cir. Dec. 17, 2018) (per curiam) (unpublished) ("[T]he opinions of non-treating examiners are not entitled to deference or special consideration. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)."); *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished) ("An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an

bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings…Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion.").[10] Failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished).

---

examining physician's opinion may receive 'controlling weight' as a treating source might."); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 489 (11th Cir. 2012) (per curiam) (unpublished) ("[T]he ALJ was not required to defer to Dr. Jin's opinion because he only examined Beegle on a single occasion and did not treat him. *See McSwain*, 814 F.2d at 619.").

[10] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Abbington's present applications. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

# A.    Treating Physician's Opinion

Abbington claims that the ALJ reversibly erred in rejecting the medical opinions of her treating physician Dr. Mark Roberts, and of consultative examining physician Dr. Richard Harris.  The ALJ addressed Dr. Roberts's opinion as follows:

> In December 2015, Mark Roberts, M.D. completed a "Disability Claim Questionnaire" and "Physical Capacities and Pain Evaluation."  His responses to the former were transcribed due to their illegibility.  He reported the claimant's medical problems included cervical degenerative disc disease with Arnold Chiari type I malformation, major depressive disorder, vascular headaches, fibromyalgia, neuralgia or neuritis, and carpal tunnel; however, he assessed the severity and impact on the ability to pursue gainful employment of only two of these problems, cervical degenerative disc disease and major depressive disorder.  He indicated these two were moderately severe and caused a decreased level of concentration secondary to pain.  Her related treatment had included medication and appointments with neurology and pain management.  Dr. Roberts was asked to assess her ability to engage in gainful employment "considering age, physical and mental condition, education and job experience."  He responded, "Patient would need retraining.  However, due to her diagnosis above, patient probably would be difficult to find gainful employment."  He opined that her disability had been present for about two years.  His prognosis was that she needed "further treatment & with no job it is difficult to get the treatment."  Dr. Roberts indicated that in an eight-hour workday the claimant could sit, stand, and walk for four hours each "total at one time;" use her hands for repetitive action; and frequently bend, squat, crawl, and reach.  He indicated the claimant had greatly increased pain and to such a degree as to cause distraction from task or total abandonment of task and that physical activity would greatly increase the pain to such a degree as to cause distraction from task or total abandonment of task.  He opined pain and/or drug side effects could be expected to be severe and to limit effectiveness. (Exhibit 10F).  Dr. Roberts's opinion has been given little weight because it is not consistent with or supported by his treatment records.  His office notes do not reflect ongoing concentration limitations.  To the contrary, her attention span was noted to be normal.  The physical limitations he

indicated are not supported by clinical findings limited to tenderness. His assessment of the claimant's pain and medication side effects is inconsistent with the conservative nature of his medication management.

(R. 20 – 21).

Abbington takes issue only with the reasons given for rejecting Dr. Roberts's opinion regarding pain and medication side effects, [11] claiming that the ALJ mischaracterized Dr. Roberts's medication management as "conservative." However, Abbington articulates no compelling reason for this Court to reverse based on the ALJ's characterization. [12] The ALJ's decision contains a thorough

---

[11] (*See* Doc. 14 at 16 ("It is respectfully submitted that the ALJ's description of Dr. Roberts' treatment as being conservative does not accurately describe Dr. Roberts' attempts to manage his patient's pain."), 21 ("Although the ALJ's decision stated the reason for rejecting the opinions of Dr. Roberts regarding pain and medication side effects was because the opinions were "inconsistent with the conservative nature of his medication management" (Tr. 21), Dr. Roberts had referred Ms. Abbington to both neurologists and pain specialists.")).

[12] For instance, Abbington cites no comparator cases involving an ALJ rejecting a treating physician's opinion due to "conservative treatment," and any consistency in case law as to what kinds of treatment are sufficiently "conservative" to justify discounting a treating opinion is, at best, elusive. *Compare Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861–62 (11th Cir. 2017) (per curiam) (unpublished) ("Although Dr. Sultana opined that Horowitz's mental impairments left her unable to work, the record reflects that Dr. Sultana provided conservative mental health treatment, which consisted only of 15-minute medication management appointments. The conservative and routine nature of this treatment plan suggests that Horowitz's impairments—while significant—were not so severe that she could not perform any job duties. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability)."), *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 740–41 (11th Cir. 2018) (per curiam) (unpublished) (Treating physicians' opinions "were inconsistent with the record as a whole, since doctors repeatedly told Carter to exercise and use conservative treatments. For instance, while Dr. Nagender Reddy recommended leg elevation in combination with other conservative treatment, such as compression stockings or hose, he did not order that she keep

her legs elevated during the day; notably, he never said that Carter had to elevate her legs in order to function nor that she had to refrain from sitting or standing unless she periodically elevated her legs."), *Womble v. Comm'r of Soc. Sec.*, 705 F. App'x 923, 927 (11th Cir. 2017) (per curiam) (unpublished) ("Dr. Fine's opinion was not supported by his own treatment notes given Womble's conservative and relatively infrequent treatment. Prior to rendering his opinion regarding Womble's limitations in April 2012, Dr. Fine had treated Womble for her back disorder only two times in 2008, once in January 2012, and once in April 2012. In fact, in a treatment note dated January 24, 2012, Dr. Fine stated that he was seeing Womble for the first time in three-and-a-half years. On the same day that Dr. Fine completed the medical source statement opining that Womble was so disabled that she could not even perform sedentary work, he did not schedule a follow-up appointment for another ten weeks."), *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) ("The ALJ also noted that Parra's physical ailments were treated with an over-the-counter pain medication. We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), *and Doig v. Colvin*, No. 8:13-CV-1209-T-17AEP, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery. Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e. not surgery."), *with Huber v. Berryhill*, 732 F. App'x 451, 456–57 (7th Cir. 2018) (per curiam) (unpublished) ("The absence of recommendations for back surgery or narcotics does not suggest that Huber's treatment was necessarily conservative. Further the ALJ omitted Huber's kyphoplasty surgery and radiofrequency ablation when recounting the 'treatment regimen' that he characterized as conservative. The nature of these treatments bolsters Huber's pain allegations and suggests that the ALJ's basis for labeling his treatment conservative was misguided." (some quotation marks omitted)), *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (per curiam) (unpublished) (expressing skepticism of ALJ's determination that claimant's "regimen of powerful pain medications and injections" constituted "conservative treatment"), *and Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) ("The record does not support the ALJ's finding of a 'conservative and/or routine' treatment regimen. Although, as the ALJ noted, Plaintiff has not been hospitalized during the relevant period, there is no indication that hospitalization would be a more appropriate treatment than what she currently receives. Plaintiff has engaged in a considerable amount of regular mental health counseling and medication management. Plaintiff also takes a number of medications to treat her symptoms. Plaintiff's counselors report that she is fully committed to her treatment, citing her regular attendance, full participation, and compliance with her treatment providers. And although it appears that Plaintiff experiences some relief from her symptoms as a result of her medication, such periodic relief of symptoms is not inconsistent with disability. I conclude that Plaintiff's treatment regimen does not provide a clear and convincing

discussion of Abbington's treatment history, and Abbington does not claim that the ALJ ignored relevant record evidence – indeed, the ALJ's decision largely discusses the evidence Abbington cites in her brief in support of this claim of error. Rather, Abbington simply disagrees with how the ALJ interpreted that evidence. At most, then, Abbington asks the Court to "reweigh the evidence[] or substitute [its] judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation omitted). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner."). Longstanding circuit precedent forbids this Court from doing so. Accordingly, the Court **OVERRULES** Abbington's claim of error regarding her treating physician's opinion.

### B.     Examining Physician's Opinion

Abbington also claims that the ALJ reversibly erred in his consideration of the medical opinion of consultative examiner Dr. Harris. The ALJ summarized that

---

reason for discounting her testimony." (citations omitted)).

Absent any further assistance from Abbington, the undersigned declines to further parse the ALJ's judgment on this issue.

opinion as follows:

> After his exam, Dr. Harris completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)." He indicated her wrist pain limited her to lifting and carrying up to ten pounds occasionally. He opined she could sit for 30 minutes at one time and a total of four hours, stand for 35 minutes at one time and a total of two hours, and walk for ten minutes at one time and a total of one hour. He indicated she could occasionally operate foot controls due to back pain and occasionally reach, handle, finger, feel, and push or pull due to wrist pain. He reported knee pain limited her to occasional balancing and climbing stairs, ramps, ladders, or scaffolds. He opined she could never stoop, kneel, crouch, or crawl. He reported wrist and back pain limited her to occasional exposure to operation of a motor vehicle, extreme temperatures, vibrations, pulmonary irritants, and humidity ad [sic] wetness. He opined she could tolerate no exposure to unprotected heights and moving mechanical parts. (Exhibit 12F).

(R. 22).

The ALJ stated that he had given Dr. Harris's opinion "some weight, as it is not fully supported by his examination findings…" (R. 22). Nevertheless, the ALJ then determined that Dr. Harris's opinion was "substantially similar to the claimant's residual functional capacity and as such supports the findings in his decision." (R. 22). While the ALJ could have better explained his rationale for giving "some weight" to Dr. Harris's opinion, [13] the ALJ provided a thorough

---

[13] In particular, as the undersigned has previously observed, crediting a medical opinion simply because it is consistent with the RFC the ALJ came up with is a questionable justification. "[M]edical opinions, which are relevant evidence, *see* 20 C.F.R. §§ 404.1512(b)(1)(ii), 404.1527(a)(2), are to be examined and weighed as part of the RFC assessment, rather than as *post hoc* justification for an RFC predetermined without consideration of 'all the relevant evidence.' In other words, at Step Four the evidence is supposed to justify the RFC, not *vice versa.*" *Caffey v. Colvin*, Civil Action No. 15-00490-N, 2016 WL 6436564, at *10 (S.D. Ala. Oct. 28, 2016). *See also Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836 (11th Cir. 2018)

summary of Dr. Harris's examination notes (*see* R. 20), which were not particularly lengthy, prior to weighing his opinion, and the undersigned finds that his explanation provides a sufficient "measure of clarity" to allow the Court to determine whether it is "rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179. By finding that Dr. Harris's opinion was not "fully supported by" his notes but that it was nevertheless "substantially similar" to the RFC, the ALJ sufficiently demonstrated that he gave "some," but less than controlling, weight to Dr. Harris's opinion.[14] Moreover, since it was from a non-treating physician, Dr. Harris's opinion was not entitled to deference. *McSwain*, 814 F.2d at 619.

Abbington primarily argues that the ALJ failed to clearly explain how he considered two aspects of Dr. Harris's opinion. First, she claims that the RFC failed "to sufficiently account for Dr. Harris's opinion that Abbington could lift and carry up to 10 pounds occasionally, since the RFC states only that states that Abbington

---

(per curiam) (unpublished) ("In determining a claimant's RFC, the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence." (citing 20 C.F.R. § 404.1520(e), 416.920(e)).

[14] *Cf. Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (per curiam) (unpublished) ("Mr. Colon is correct that the ALJ erred in not stating the particular weight that was given to Dr. Pothiawala's findings regarding his mental limitations and in not mentioning the findings of Dr. Keven and Dr. Marino. *See Winschel*, 631 F.3d at 1179. But based on the record, we find that error was harmless...[W]e are not left pondering why the ALJ made the decision he made. This is not a case like *Winschel*, where the ALJ failed to provide enough information to know how he came to his decision. *See Winschel*, 631 F.3d at 1179. We do not ignore the rest of the opinion merely because of the ALJ's failure to assign weight as to Dr. Pothiawala and to mention the other two doctors. The ALJ's discussion of Dr. Pothiawala's opinion is in depth and does not leave us wondering how the ALJ came to his decision. The ALJ's order demonstrates thoughtful consideration of the findings and supports the overall conclusion that Mr. Colon is not disabled.").

"can lift and carry up to ten pounds" without any specified limitation as to frequency. (R. 15). Second, Abbington claims that the ALJ should have fully incorporated into the RFC Dr. Harris's opinion that she could only occasionally handle, finger, or feel, instead of determining that she could "frequently but not continuously perform fine and gross manipulation such as grasping, gripping, twisting, and turning…" (R. 15).

"At least where the opinion is not from a treating source, the Eleventh Circuit imposes no rigid requirement that an ALJ, in crediting a medical opinion, must repeat it word for word in the RFC determination." *Caffey v. Colvin*, Civil Action No. 15-00490-N, 2016 WL 6436564, at *9 (S.D. Ala. Oct. 28, 2016) (footnote omitted) (citing cases)). *See also Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (per curiam) (unpublished) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Moreover, here the ALJ only gave Dr. Harris's opinion "some weight," so the RFC could not be expected to mirror the opinion.

Abbington's argument regarding Dr. Harris's lift-and-carry opinion is largely a semantic one, and the undersigned is not convinced that reversible error has been shown on this point. By limiting Abbington to lifting and carrying up to 10 pounds, the ALJ implicitly indicated that 10 pounds was the maximum she could lift and carry, and one can reasonably assume that a person could be expected to lift and carry the maximum weight which she is able only on an infrequent or occasional

basis. As for Dr. Harris's manipulative limitations opinion, the ALJ expressly noted that Dr. Harris's report indicated that, while she "did not lace and unlace well," Abbington had "full range of motion of the elbows, wrists, and all finger joints[, her] grip and pinch strength was 3/5[, and s]he was able to open and close doors, button and unbutton, and pick up small objects." (R. 20, 400 – 401). This is substantial evidence supporting the ALJ's decision to only give "some" weight to Dr. Harris's opinion regarding manipulative limitations.[15]

In sum, Abbington has failed to show reversible error in the ALJ's consideration of Dr. Roberts's and Dr. Harris's medical opinions. As explained in the Court's prior order (Doc. 26), she has also waived her Appointments Clause challenge to the ALJ who denied her applications. There being no other claims of error raised, the Court finds that the Commissioner's final decision denying Abbington benefits is therefore due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, and the analysis in the Court's order denying Abbington's separate motion for remand (Doc. 26), it is **ORDERED** that the Commissioner's final decision denying Abbington's June 9, 2014 applications for a period of disability, DIB, and SSI is **AFFIRMED** under sentence

---

[15] Abbington claims that the ALJ felt pressured, as "an errant consideration of judicial economy," to give only some weight to Dr. Harris's opinion because it was rendered two months after the ALJ hearing and did not fully conform to the ALJ's hypothetical to the vocational expert at that hearing. This argument can be rejected solely as being based on pure conjecture. However, even assuming it is true, Abbington has still failed to show that substantial evidence does not support the ALJ's decision to give only some weight to Dr. Harris's opinion.

four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 26th day of February 2019.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**